DECISION AND JUDGMENT ENTRY
{¶ 1} This is an accelerated appeal from a judgment of the Lucas County Court of Common Pleas, entered after the parties tried their cases to the bench. In pertinent part, that judgment ordered the foreclosure of a land installment contract and awarded plaintiffs-appellants, James W. and Judith J. Monaghan, $65,428.74 as the balance due on the land contract as of February 1, 2002. Appellants have appealed that judgment, raising the following assignment of error:
 {¶ 2} "The Lucas County Court of Common Pleas erred in its calculation of the final principal balance due under the land contract, in that it failed to properly account for the actual amounts paid, and the actual interest rate(s) charged, and therefore its finding that only $65,428.74 was due under the land contract was against the manifest weight of the evidence."
 {¶ 3} The relevant facts of this case are as follows. On March 30, 1990, appellants and defendants-appellees, Majid Monazahian and Mojgan Mortazavi, entered into a land installment contract under which appellees purchased from appellants a parcel of real estate known as 5902 Dorr Street, Toledo, Ohio, for $150,000. Under the terms of the contract, appellees made a down payment of $14,000 with the balance of $136,000 to be paid in consecutive monthly installments of $1,313.76, beginning on February 1, 1990. The interest rate on the unpaid balance due was listed as 10 percent per year, adjusted monthly. The contract further provided, however, that upon default by appellees of the conditions listed in the contract, appellants could, at their option and without notice to appellees, adjust the interest rate payable to 12 percent per year. An addendum to the contract also required appellees to make two cash payments of $5,000 each on February 22, 1991 and February 22, 1992, as reductions of the principal. Despite the payment amount listed in the contract, appellants informed appellees in March 1991 that the monthly payment due under the contract should be $1,265.46. Then, in May 1991, appellants notified appellees that the payment should be $1,278.81. Thereafter, appellants notified appellees that in March 1992, they were to pay the original contract amount. Appellees complied with each of these adjustments.
 {¶ 4} On August 25, 1995, a second addendum to the contract was signed by the parties. That addendum included the following provisions: "1. The vendees herein agree that each installment payment which is due on or after June 1, 1995 shall be paid no later than the tenth (10th) day of each month and that interest on the underlying note shall be ten percent (10%) per annum subject to possible escalation to twelve percent (12%) per annum under triggering conditions as described in the original Commercial Land Installment Contract between the parties. 2. All such installment payments due beginning with the payment due on June 1, 1995 shall be paid directly by deposit by the vendees into account number * * * at Society Bank. 3. Said installment payments which are paid after the tenth (10th) of each month shall cause the vendees to incur a late charge of five (5) percent of the amount due; and said late charge is due and payable at the due date of the next installment payment. 4. Failure to pay either the late payment penalty described in paragraph three (3) above by the thirty-first day after said payment was due or failure to pay the monthly installment payment by the thirty-first day after the said payment was due shall be mutually considered by the parties to be a material default of the underlying land installment contract, and said default shall constitute grounds for immediate foreclosure on the underlying note embodied within the said land installment contract."
 {¶ 5} Over the next several years, appellees consistently made the monthly payments due under the contract on or about the 10th day of the month by depositing the amount due into the account described in the second addendum to the contract. Because the 10th day of the month occasionally fell on a Saturday, however, the amount due was at times not credited to appellants' account until the next business day.
 {¶ 6} On March 21, 2000, appellants filed a four count complaint against appellees alleging, in pertinent part, that appellees had breached the contract by failing to make monthly payments in a timely fashion and by failing to pursue bank financing as required by the contract. Appellees filed four counterclaims which are not relevant to the issues on appeal. Subsequently, the case was tried to the court at which three of the witnesses were appellant James Monaghan, appellee Majid Monazahian and appellees' expert Josephine Haddad, a certified public accountant. With regard to the principal balance due under the contract, Monaghan testified that based on the calculations of his accountants and assuming that the February payment would be timely made, the balance due was $91,979.20. In contrast, Haddad testified that based on her calculations and a standard amortization schedule, the principal balance due under the contract after the February payment was made would be $62,028.74. On March 13, 2002, the lower court issued a decision and judgment entry ruling on all of the parties' claims. In pertinent part, the court held that appellees had not breached their duty to pay installments in a timely manner. The court further held, however, that appellees were in default of the land contract by failing to diligently pursue bank financing for the purchase of the property. The court therefore held that appellants were entitled to pursue foreclosure and that the entire balance of the land contract was due and payable. Finally, the court calculated the amount due as follows: "The contract provided that the balance of $136,000 was to be paid in consecutive monthly installments of $1,313.76 `beginning on the 1st day of Feb., 1990.' Defendants' initial monthly payment was made on May, 1990. Upon consideration of the payments made by defendants since May, 1990, and that the first payment was due on February 1, 1990, the Court has determined that the balance owing as of February 1, 2002, is $65,428.74." It is this portion of the judgment that appellants now challenge on appeal.
 {¶ 7} Appellants assert that the trial court's determination of the balance due under the land installment contract is against the manifest weight of the evidence in that there is nothing in the record to support the court's calculation. Appellants further argue that the court ignored evidence that appellees did not pay in a timely manner and that the 12 percent interest rate was imposed under the terms of the contract for 45 months due to appellees' default.
 {¶ 8} It is well-settled that "an appellate court should not substitute its judgment for that of the trial court when there exists * * * competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge." Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80. Accordingly, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, the syllabus.
 {¶ 9} We first note that the record supports the trial court's conclusion that appellees were not in default for untimely payments. Appellants' arguments regarding such default are, therefore, irrelevant. Upon a review of the record in this case, however, it is unclear to us how the trial court reached the figure of $65,428.74 as the balance due under the contract. Based on the language in the decision quoted above, it appears that the court intended to add three months of payments to the figure testified to by appellees' witness Josephine Haddad; that is, $62,028.74 plus three payments of $1,313.76 each. Three payments of $1,313.76, however, totals $3,941.28 for a total balance due of $65,970.02. We find it curious that the difference between Haddad's figure and the figure ordered by the trial court is exactly $3,400, or three times $1,133. Although there is nothing in the record to suggest that the trial court transposed the second and third numbers of the monthly payments due under the contract in reaching the figure ordered, we can find no other calculation that creates the figure ordered.
 {¶ 10} Upon appellate review of a factual finding, there must be some evidence in the record to support that finding. In the present case, that evidence evades us. Accordingly, the sole assignment of error is well taken.
On consideration whereof, the court finds that substantial justice has not been done the party complaining and the judgment of the Lucas County Court of Common Pleas is reversed in part. This case is remanded to that court for either an explanation as to how the court reached the figure ordered or a redetermination of the amount ordered. Court costs of this appeal to be shared equally by the parties.
 JUDGMENT REVERSED IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Mark L. Pietrykowski, J., Judith Ann Lanzinger, J., and Arlene Singer,J., CONCUR.